Anne M. Evans v. Commissioner.
Evans v. Commissioner
Docket Nos. 40910, 53127.
United States Tax Court
T.C. Memo 1955-126; 1955 Tax Ct. Memo LEXIS 213; 14 T.C.M. (CCH) 461; T.C.M. (RIA) 55126; May 19, 1955
Anne M. Evans, 913 North 12th Street, St. Louis, Mo., pro se. Hunter D. Heggie, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent has determined deficiencies in petitioner's income tax and penalties as follows: Sec. 293(a)
Docket No.
Year
Deficiency
Penalty
40910
1946
$1,198.96
$59.95
1947
296.10
14.81
1948
420.00
21.00
1949
296.06
14.80
53127
1950
799.27
The issues before us are: (1) Are any of respondent's deficiency determinations barred *214 by the statute of limitations? (2) Did petitioner receive any gain from the sale of real property in 1946, 1947, 1948, 1949, and 1950? (3) Was petitioner entitled to certain deductions in 1950 for a theft loss, legal expense, bad debt loss, and other miscellaneous items? (4) Was petitioner entitled to a deduction for uninsured fire losses in 1948? (5) Was petitioner entitled to certain loss deductions claimed as a result of publishing songs and making recordings for the years 1946 through 1950? (6) Did petitioner receive rental income in 1946, 1947, 1948, and 1949? (7) Is any part of the deficiencies for the years 1946 through 1949 due to negligence or intentional disregard of the rules and regulations of the Internal Revenue Code? Findings of Fact General Some of the facts were stipulated and are hereby incorporated by this reference. Petitioner, a resident of St. Louis, Missouri, filed income tax returns on form 1040 for 1946, 1947, and 1950, and on form 1040A for 1948 and 1949 with the collector of internal revenue for the first district of Missouri. Petitioner was graduated from Vassar College in 1906 and a few years later from Benton College with a Bachelor's *215 and Master's degree in law. She is admitted to practice law in Missouri. In addition she is also a graduate television technician. Even though petitioner was principally occupied as a school teacher, in addition she wrote and published songs and made records under the name of the University Music Company. Petitioner also owned and operated income producing real property. Issue I. Statute of Limitations Facts. - Petitioner filed with the collector of internal revenue for 1946 an income tax return, form 1040, dated March 14, 1947. This form contained petitioner's name, address, date, signature, and the following statement: "Total income less than $5000. Employed by St. Louis Board of Education and the tax has been withheld. Do not owe any additional tax." The word "None" was entered on the line calling for the amount of tax due. Petitioner did not attach any withholding statements, form W-2. At the hearing petitioner presented another form 1040 for 1946; this form was completely filled in, but it or a copy of it had not been filed with the collector. This form reported that she received $4,102.65 from the St. Louis Board of Education. She also reported $90.60 as income from *216 rents and royalties, and there was an itemized statement showing expenses on rental property. The form showed an $88.25 loss from song publishing, a $585 loss from the sale of her home, a $160 depreciation deduction for her automobile, and $1,170 loss for the sale of the Gannon Street property. Finally, for the computation of the tax, petitioner indicated an overpayment of $15.90. For the year 1947 petitioner filed a form 1040 tax return dated March 12, 1948. This form contained her name, address, date, signature, and the following statement was written across the form: "Income not over $500.00." Nothing else was listed on this form; petitioner's withholding statement, form W-2, was not attached. At the hearing petitioner presented another form 1040 for 1947. It showed a teacher's salary, income from rents, a song publishing loss of $88.25, loss from the sale of capital assets, and automobile depreciation. This form or a copy of it was not filed with the collector. Petitioner filed a form 1040A for 1948, dated February 24, 1949. Petitioner reported a salary of $1,800 from the St. Louis Board of Education. At the hearing she presented a filed in form 1040 showing $1,880 of *217 teacher's salary, income and expenses from rental property, a song publishing loss of $88.25, gain from the sale of capital assets, automobile depreciation, and many itemized deductions. Among the itemized deductions were $50 for contributions, loss of a metal garage of $300, uninsured fire loss on real property, and depreciation for a Varitype machine. No tax liability was shown. This form or a copy of it was not filed with the collector. Petitioner filed a form 1040A for 1949, dated March 13, 1950, wherein she reported a teacher's salary of $4,500. At the hearing a form 1040 tax return for 1949 was presented and this return was similar in all respects to that described above for 1948. Petitioner filed a form 1040 tax return for 1950, dated March 14, 1951. Respondent's deficiency notices for 1946, 1947, 1948, and 1949 were dated February 26, 1952; petitioner received them March 3, 1952. The deficiency notice for 1950 was dated March 5, 1954; it was mailed March 8, 1954, and delivered to petitioner on March 17, 1954. Opinion. - Petitioner contends that the statute of limitations has run for each of the years before us. Since petitioner received the deficiency notices for *218 1948 and 1949 on or before March 15, 1952, it is obvious that the statute of limitations under section 275 [1] of the 1939 Code is not applicable to these two years and does not bar respondent's determination. The years 1946, 1947, and 1950 can not be resolved as simply. In 1946 petitioner failed to report any gross income. Her return merely indicated that her gross income was less than $5,000. However, even if for the sake of argument we accept $5,000 as the gross income reported by petitioner, her salary of $4,102.65, rent receipts of $1,810, [2] and gross income of $7,750 [3] from the sale of real property aggregate *219 in excess of $13,000, which is obviously more than 25 per cent in excess of $5,000. Therefore, under section 275(c), [4] the statute of limitations has not run for 1946. The same rule would be applicable for 1947 where petitioner reported "Income not over $500.00." Petitioner also contends that the statute of limitations has run for 1950, and respondent is precluded under section 275(a) from assessment of the deficiency. It is agreed by the parties that the deficiency notice for 1950 was mailed by respondent on March 8, 1954, and received by petitioner on March 17, 1954. The mailing date was well within the three-year period after the due date of petitioner's return. Nevertheless, petitioner contends that the date of receipt of the *220 deficiency notice is controlling. Contrary to her contention the mailing date rather than the date of receipt is the critical time. , affd. . Therefore, the deficiency notice for 1950 was timely. Respondent is not barred by the statute of limitations from assessment and collection of the tax for each of the years 1946 through 1950. Issue II. Sale of Real Property Facts. - During the years before us petitioner sold six parcels of improved real property. The sales were not reported on her income tax returns. It has been stipulated that petitioner expended $2,492.16 for improvements on this property, and that an estimated $8,000 should be allowed for cost of labor on her real estate. The figure for the labor cost has been the aggregate expenditure for nine years, four of which are before us. When the expenditures for improvements and labor are allocated to each parcel the allocation provides $415.36 for improvements and $1,333.33 for labor. Respondent has determined that the labor was used for capital improvements. A composite depreciation rate of 3 per cent is reasonable and proper for petitioner's *221 property which was sold. (a) In 1946 petitioner sold property known as 7843 Gannon Avenue, University City, Missouri, for $14,600. The net sale price after fees, stamps, and sales commission was $14,064.03. Petitioner purchased the property in 1934 for $3,500. The initial cost, plus $415.36 for improvements, and $1,333.33 for labor, provides a basis, without depreciation, of $5,248.69. In the deficiency notice respondent used $15,000 as the sales price; this was reduced by original cost of $3,500, improvements of $3,000, and sales commission of $750 to give a gain of $7,750. (b) In 1947 petitioner sold property known as 4650-52 Greer Avenue, St. Louis, for $3,500. She purchased this property in 1925 for $3,225. Respondent allowed a 1947 adjusted basis of $1,000 and determined that the gain from the sale was $2,500. (c) In 1948 petitioner sold two pieces of property, one known as 4651-53 Greer Avenue, and the other as 3962 Aldine Avenue, both in St. Louis. The first parcel was sold for $4,500 and the second for $1,800. Petitioner purchased the Greer Avenue property for $2,300 in 1925. The initial cost of the Aldine Avenue property was not shown. Respondent allowed a 1948 *222 adjusted basis for the properties of $2,300, and determined an aggregate gain of $4,000 for both properties. (d) In 1949 petitioner sold property known as 3910 Aldine Avenue, in St. Louis, for $3,025. The property was purchased in 1925. Respondent allowed a basis of $1,025 for the property, and determined a gain of $2,000 from the sale. (e) In 1950 petitioner sold property known as 4146 Papin Street, St. Louis, for $1,500. Respondent allowed a basis of $750, and determined a gain of $750 from the sale. Opinion. - On this issue, which involves the sale of six parcels of petitioner's real property, respondent must be sustained for 1947, 1948, 1949, and 1950. In 1946, for the sale of the Gannon Avenue property, the proven net sales price of $14,064.03, less respondent's determined basis of $6,500 shall be used to compute gain from the sale. Petitioner has proved certain expenditures for repairs, improvements, and labor, but she has not offered sufficient proof to show respondent's determination to be in error. It must be pointed out that respondent allowed bases which were in excess of those proved by petitioner. Issue III. Deductions for 1950 (a) Theft Loss. Facts. *223 - Petitioner had a two-ton all metal truck garage on one parcel of her land. Sometime in 1948 or 1950 the garage was stolen. In 1950 petitioner claimed a theft loss of $950, and respondent disallowed the loss. Opinion. - Respondent must be sustained on the disallowance of the claimed theft loss for the garage. Petitioner has not proved in which year the loss occurred, nor has she proved the amount of the loss. (b) Legal Expense - Valentin case. Facts. - On April 7, 1944, Theodore Bradley, nephew of William N. Valentin, filed an information in the probate court in the City of St. Louis charging that Valentin was a person of unsound mind and incapable of managing his affairs and property. Bradley requested that an inquiry be had. Four days later, petitioner, who had known Valentin as a teacher in the St. Louis school system, took him to a specialist in diseases of the mind and nervous system for an examination. At the conclusion of the examination the specialist formed an opinion that Valentin was capable of managing his affairs. Immediately petitioner had Valentin execute a power of attorney appointing her his attorney to handle his financial affairs. Valentin's estate was then *224 valued at some $65,000. Following the execution of the power of attorney, petitioner entered her appearance as Valentin's counsel in the probate court. On April 26, 1944, at a hearing before a jury, there was a verdict that Valentin was of unsound mind and incapable of managing his affairs. Petitioner appealed to the circuit court and that court, on its own motion, appointed an associate counsel for Valentin. On June 7, 1944, a verdict was returned that Valentin was of unsound mind and incapable of managing his affairs. In due time the judgment of the court was certified to the probate court. On June 21, 1944, the probate court appointed Ben F. York as guardian of Valentin's person and estate. On October 5, 1944, petitioner filed a claim against the estate of Valentin, an insane person. This claim was founded upon an account for legal services allegedly rendered by petitioner to Valentin from April 1, 1944, to October 1, 1944. The item claimed for legal services was $1,500. Expenses brought the total to $1,808.43, less a credit of $500. The probate court disallowed the claim but after a trial to a jury in the circuit court judgment was returned for petitioner. The case was appealed *225 and in , the St. Louis Court of Appeals held on June 18, 1946, that petitioner was not entitled to receive the full amount of her demand which the lower court gave her. The case was then reversed with directions. Upon retrial of the case in the circuit court a verdict was returned in favor of the defendant York. Again, upon petitioner's appeal to the St. Louis Court of Appeals on December 21, 1948, in , the judgment was affirmed in York's favor. Sometime later petitioner again sought to recover the sum of $6,280.69 alleged to be due her for services as attorney for Valentin. The trial court dismissed the case and on February 15, 1949, the St. Louis Court of Appeals in , held that petitioner "had no right to act for Valentin, and is not entitled to any compensation for attempting to do so." On petitioner's 1950 tax return she deducted $2,150 as expenses in the Valentin case. Respondent disallowed this deduction. Opinion. - Petitioner has not shown that any legal expenses were incurred in the year the deduction was claimed. It appears from the facts *226 that even if petitioner were properly entitled to a deduction, all of the expenses incurred in the Valentin case occurred in years prior to 1950 which is the year she claimed the deduction. Petitioner has not proved the amount or the propriety of the claimed deduction in 1950. (c) Bad Debt Loss. Facts. - On January 25, 1950, petitioner in connection with some oil transactions received an interest-bearing demand note from Humphrey Marshall for $2,000. This note was also executed by Lucile Ballinger and Frances Stillwell as co-makers. Petitioner experienced difficulty in collecting the $2,000 from Marshall and as a result she sued the estate of Frances Stillwell for $1,000 and collected it. The suit was not entered for the entire amount because she did not want to take it all from the estate. In 1950 petitioner deducted for the Marshall transaction $1,000 as a loss from worthless oil stock. Respondent disallowed the deduction. Opinion. - Petitioner received $1,000 on Marshall's note by legal process but she voluntarily declined to pursue her legal remedy for the entire amount. Further, she did not prove that she could not collect the remaining $1,000 from Marshall or Lucile Ballinger, *227 the other co-makers. Petitioner has not shown the claimed debt to be bad in 1950 and respondent's disallowance of the bad debt deduction must be sustained. (d) 1950 Miscellaneous Deductions. Facts and Opinion. - In her petition for 1950 petitioner relied on certain alleged errors in the deficiency notice. Some of these errors have been considered above and now we shall consider the remainder. Petitioner claimed an itemized deduction of $14.50 for "Sales tax" and $55 for "Car License." Respondent disallowed these deductions. We have examined the evidence presented by petitioner to support them and we find that they were proper. Again petitioner claimed that respondent erred when a $1,000 deduction for depreciation was not allowed on certain California property. This deduction was not claimed on her 1950 return but was claimed at a later date for that year. Petitioner has not shown that she was entitled to this deduction and respondent must be sustained. Petitioner also claimed certain other deductions on account of contributions and interest. We can not find that the claimed deductions were supported by petitioner's proof. Therefore, respondent's disallowance must be approved. *228 Issue IV. Fire Loss Facts. - Sometime prior to December 21, 1945, petitioner suffered fire damage in a building located at 4651-53 Greer Avenue. In 1946 she received two proposals to repair the damage. Both proposals indicated that the damage could be repaired for less than $950. Petitioner also sustained a fire loss at 4146 Papin Street prior to January 14, 1947. A building permit was issued to repair the damage, and the estimated cost of the repair as indicated on the permit was $400. Petitioner claimed a deduction for 1948 of $1,500 for 4651-53 Greer Avenue and $1,500 for 4146 Papin Street. These deductions were not claimed on her 1948 return, but were claimed in her petition, and on an exhibit presented at the hearing. Opinion. - Respondent's disallowance of petitioner's claimed fire loss deduction for the Greer Avenue property should be approved. The fire occurred and the loss was sustained prior to December 21, 1945. Since this is prior to any year before us, the deduction may not be allowed. However, a loss deduction for the Papin Street property should be allowed. Petitioner proved a loss of $400, rather than the claimed $1,500, and from the record we also find *229 that the loss was sustained in 1947 rather than in 1948. Issue V. Music Expense Facts. - Petitioner owned and operated the "University Music Company." This company published sheet music and issued records under its own label. Copyrights for most of its music had been secured by petitioner. In 1942 the University Music Company published a list of 22 songs that were available for sale. It is stipulated that petitioner spent $7.01 on her music activities in 1946; $1,158.37 in 1947; $1,122.50 in 1948, and $11.58 in 1949. It was also stipulated that petitioner spent money on music activities as early as 1938. The stipulation does not describe how this money was spent other than that it was spent for "music." In 1942 petitioner entered into a licensing agreement with Broadcast Music, Inc., of New York City. In 1952 this agreement was terminated by mutual consent. For some time prior to the termination of the agreement petitioner had not sent her music to Broadcast Music, Inc. Petitioner did not report any sale or expenditures for her music business for the years 1946 through 1949; in 1950 she claimed a deduction for "Disco Music Recording" in the amount of $430. Opinion. - *230 Petitioner in her petitions, but not on the returns filed with the collector, claimed a loss of $88.25 for the production and copyrighting of songs for each of the years 1946 through 1949. She also claimed a deduction of $430 on her 1950 return for "Disco Music Recording." Respondent has disallowed these deductions contending that the expenditures were investments in the University Music Company, and in the alternative that they were nondeductible personal expenses for a hobby. It is impossible from this record to determine the purpose for which petitioner conducted her music activities. Did her activities constitute a business, did she work for a profit, or was it for some personal activity such as a hobby? Petitioner did not keep books, in fact she did not keep any adequate records from which profit or loss could be computed. We have no sales figures, actual, estimated, or determined, for any of the years 1938 through 1950. It has been stipulated that petitioner made no money from her music activities, and except for a single exhibit for 1942 there is no showing that petitioner attempted to profit from her music activities in the years before us. There is, however, evidence that *231 petitioner used some of her music in 1952 for political purposes, not only for herself as a candidate for Congress, but also for a presidential candidate. It appears that petitioner, herself, did not consider that she was in a music business. She did not report on her tax returns any sales or expenses for her music activities for the years 1944 through 1949. Even the reference to the claimed deduction in her 1950 return did not indicate that she was engaged in a music business. On this record respondent must be sustained for we are unable to find that petitioner was in business or that she engaged in her music activities for profit. Issue VI. Rental Income Facts and Opinion. - Petitioner did not report any receipts or expenses for her rented real property for the years 1946, 1947, 1948, and 1949. Respondent determined that petitioner received gross rental receipts of $1,810 in 1946, $1,810 in 1947, $1,110 in 1948, and $1,105 in 1949. At the hearing petitioner admitted the gross rental receipts are determined by respondent for 1946, 1947, and 1948; she admitted the receipt of $841.82 in 1949. Petitioner's claimed expenses for the income producing property, including aggregate *232 depreciation of $160 for each year, was $1,719.40 in 1946, $1,262.90 in 1947, $875.40 in 1948, and $2,568.30 in 1949. However, at the hearing she proved expenses exclusive of depreciation, of $259.24 in 1946, $71.38 in 1947, $276.72 in 1948, and $208.03 in 1949. Even if we were to accept petitioner's claimed depreciation of $160, her proven expenses are much less than her claimed expenses. On the other hand, respondent has allowed for expenses and depreciation, $905 for 1946, $905 for 1947, $555 for 1948, and $552.50 for 1949. Respondent determined that the difference between gross rental receipts and allowances for expenses and depreciation constituted petitioner's rental income. Petitioner has not shown respondent to be in error, therefore respondent's determination must be sustained. Issue VII. Negligence Penalty Facts. - Petitioner, an attorney admitted to practice in the State of Missouri, attended tax institutes sponsored by the Missouri Bar Association, and also some sponsored by the American Bar Association. She taught high school classes in mathematics. In addition, she taught students the proper method of filling out income tax forms. Opinion. - Part of the deficiencies *233 for 1946, 1947, 1948, and 1949 was due to petitioner's negligence or intentional disregard of the rules and regulations in the preparation of her income tax returns. Respondent has determined under section 293(a) [5] that some part of the deficiencies on petitioner's income tax returns for 1946 through 1949 was due to negligence or inentional disregard of the rules and regulations of the Internal Revenue Code. A determination of negligence is not to be taken lightly, and the record when such a determination has been made must be circumspectly examined. This we have done and can only conclude that respondent must be sustained. Some of the facts which constrain us to sustain respondent's penalty determination are as follows: Petitioner had particular knowledge of Federal income tax matters. She *234 was an attorney admitted to practice law in Missouri. She taught students how to prepare Federal income tax forms. Petitioner failed to keep formal books or even records which would properly account for her gains or losses. Perhaps the most conclusive evidence of negligence is the manner in which petitioner filed her tax returns. In 1946 and 1947 she actually reported no income. She failed to report salary, rental income, gain from the sale of property, and various other items. In 1948 and 1949 she did report a teacher's salary but no other gain. Petitioner has not explained, either at the hearing or on brief, why her income producing transactions were omitted from her returns. It is proper on the record before us that respondent's determination for a penalty under section 293 (a) be sustained. In addition to those errors alleged in the petitions and in their amendments, petitioner, at the hearing and on brief, stated that she was entitled to many other deductions. For example, some of these were found on filled in tax forms which were presented at the hearing but which had not been filed with the collector of internal revenue. There is considerable doubt in the first instance *235 whether these claimed deductions are properly in issue, but even if we were to assume that they are in issue, none of these claimed deductions or expense items have been proved. As proof of the claims petitioner has submitted such evidence as a receipt for $16.91 paid in 1948 for used automobile tires. We find as another exhibit a 3 X 5 card which contains a description of a "Victor projector" and its accessories; there is a notation at the bottom of the card, "$490.00." There is also a stub of an airplane ticket indicating that $177.79 had been paid in 1946 for air travel between Fort Worth, Texas, and St. Louis. These exhibits and others like them might be evidence of a proper deduction or loss, but in themselves, and without being tied down to a specific year, use, or purpose, they do not prove the propriety of petitioner's claims. It may appear that petitioner has unduly suffered as a result of the rule that the burden of proof is upon her. However, her unenviable position is one of her own making, not only because she has failed to keep adequate records but more properly because she has not recognized that she has the burden of proof in these proceedings. It was stipulated *236 that petitioner expended certain sums, but she has presented her case in such a fashion that she has not shown when many of these sums were paid or for what purpose they were paid. Respondent on brief conceded property tax payments of $174.75 for her Kraft Avenue, California, property in 1948, and $283.73 for 1950. These, together with petitioner's admitted salary of $1,880 for 1948, shall be properly considered in a Rule 50 computation. Decisions will be entered under Rule 50. Footnotes
1. SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION. Except as provided in section 276 - (a) General Rule. - The amount of income taxes imposed by this chapter shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period. * * *
(f) For the purposes of subsections (a), (b), (c), (d), and (e), a return filed before the last day prescribed by law for the filing thereof shall be considered as filed on such last day.↩
2. Hereinafter determined in Issue VI. ↩
3. Hereinafter determined in Issue II. ↩
4. (c) Omission from Gross Income. - If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed.↩
5. SEC. 293. Additions to the Tax in Case of Deficiency. (a) Negligence. - If any part of any deficiency is due to negligence, or intentional disregard of rules and regulations but without intent to defraud, 5 per centum of the total amount of the deficiency (in addition to such deficiency) shall be assessed, collected, and paid in the same manner as if it were a deficiency, * * *.↩